UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

8|15|07

-------------------------------------------X

PETER GIACCIO, Jr.,

                              Plaintiff,          04 Civ. 3652 (RWS)

         -against-

THE CITY OF NEW YORK, THE NEW YORK CITY          OPINION
DEPARTMENT OF TRANSPORTATION, AND IRIS
WEINSHALL in her individual and official
capacity,

                              Defendants.

-------------------------------------------X

A P P E A R A N C E S:


          Attorneys for Plaintiff

          FRIEDMAN & JAMES, LLP
          132 Nassau Street
          New York, NY 10038
          By:  Andrew V. Buchsbaum, Esq.
               Bernard D. Friedman, Esq.


          Attorneys for Defendants

          NEW YORK CITY LAW DEPARTMENT
          100 Church Street
          New York, NY 10007
          By:  Rippi Gill, Esq.

1

**Sweet, D.J.**

Defendants, the City of New York (the "City"), the New York City Department of Transportation ("DOT") and Iris Weinshall ("Weinshall") (collectively, the "Defendants") have moved for summary judgment under Rule 56, Fed. R. Civ. P. to dismiss the Amended Complaint of plaintiff, Peter Giaccio, Jr. ("Giaccio" or the "Plaintiff"). For the reasons set forth below, the motion is granted.

## Prior Proceedings

Giaccio filed his complaint on May 13, 2004 alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 (d); 42 U.S.C. § 1983; the New York State Human Rights Law ("NYSHRL"), NY Executive Law §§ 290, et seq.; and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code §§ 8-101, et seq. arising out of a violation of his rights to privacy, due process and equal protection of the laws by failing to maintain the confidentiality of Giaccio's random drug and alcohol test results and by disseminating those results to the media.

By an Opinion dated January 19, 2005, Giaccio v. City of

2

New York, 2005 WL 95733 (S.D.N.Y. Jan. 19, 2005), the Defendants'
motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) was granted
in part and denied in part, with only Plaintiff's section 1983
claim dismissed for failure to allege a custom or policy of the
municipality.[1]  See id. at *7.   The section 1983 claim was
dismissed without prejudice and Giaccio was granted leave to
replead. See id. at *8.

Giaccio on February 8, 2005, filed an Amended Complaint
("Am. Compl.") alleging, inter alia, that "on at least three (3)
occasions prior to the dissemination of the confidential medical
information regarding plaintiff as alleged herein, the City and/or
DOT disseminated random drug and alcohol test results pertaining to
employees other than plaintiff, without the consent of said
employees." Am. Compl. ¶ 28.

Discovery proceeded and has been completed.

The instant motion was heard and marked fully submitted
on April 18, 2007.

---

[1] Plaintiff's section 1983 claim against Iris Weinshall,
Commissioner of the DOT, in her individual capacity was dismissed
sua sponte, because of the absence of allegations that Weinshall
personally participated in the events giving rise to this suit.
See id. at *7.

3

**The Facts**

The facts are set forth in the parties' Local Civil Rule 56.1 statements and are not in dispute except as noted below.

Giaccio has been employed as a boilermaker by DOT since 2001. As boilermaker, he is involved in burning, welding, creating layouts and fabricating steel at a DOT facility located on Bay Street, Staten Island, opposite the St. George Staten Island Ferry Terminal ("Bay Street DOT Facility").

Although the main DOT personnel department is located at 40 Worth Street in Manhattan, DOT also maintained a personnel coordinator, Lena Marinaro ("Marinaro"), and other personnel records at the Bay Street DOT Facility.

Pursuant to the Omnibus Transportation Employee Testing Act of 1991, Pub. L. No. 102-143, Title V, 105 Stat. 917 (1991), employees such as Giaccio are subject to random drug and alcohol testing. DOT employee testing is conducted via urine sample obtained by a collector employed by a third-party administrator ("TPA") hired by DOT. When a donor such as plaintiff provides a urine sample, a Custody and Control Form ("CCF") is required which consists of five-part carbonless manifold form which allows

4

multiple imprints to be made on each form. Copy one of the CCF, entitled "laboratory," does not contain the donor's name and is provided to the testing lab with specimen bottle seals. Copy two, the "medical review officer copy," contains the donor's name along with a space indicating whether the test was positive and is provided to the medical records officer ("MRO"). Copy three, the "collector copy," also contains the donor's name and test results and is maintained by the collector for at least thirty days. Copy four, the "employer copy," also contains the donor's name and test results and is provided to the designated employer representative. Copy five, the "donor copy," is provided to the donor at the time of collection.

As a boilermaker employed in a "safety sensitive" position, Giaccio was subject to random drug and alcohol testing by DOT and failed two drug tests based on analysis of his urine: one sample collected on December 13, 2002 and another sample collected on June 24, 2003. Both of these samples tested positive for marijuana. According to the MRO's Final Reports, DOT was notified of these results on December 18, 2002 and June 30, 2003, respectively. DOT has failed to produce its copy of the CCF and cannot account for the whereabouts of this copy of the form.

After each positive test, Giaccio was placed on medical

5

leave without pay. Giaccio was notified of his medical leave status by memorandua, the first dated December 18, 2002 and the second July 8, 2003, from Erica Caraway, DOT's Acting Disciplinary Counsel. Copies of these memoranda were provided to, among others, Marinaro and Giaccio's Supervisor at the Bay Street DOT Facility, Michael King.

In each instance after he was placed on leave, Giaccio obtained treatment for marijuana use. After treatment he was placed back on full duty. Since the June 24, 2003 drug test, Giaccio has never tested positive for drugs or alcohol. He has not challenged his drug test results by way of administrative or judicial appeal.

On November 18, 2003, Giaccio received a telephone call from his brother, John Giaccio, DOT borough commissioner for Staten Island, alerting Giaccio that someone had leaked plaintiff's drug testing results and that an article would be forthcoming in Newsday identifying plaintiff by name and mentioning his positive drug test results for marijuana. John Giaccio had been alerted by Weinshall of the Newsday article. A reporter contacted Giaccio before the Newsday article appeared and Giaccio did not comment.

On November 20, 2003, Giaccio was instructed to place

6

locks on all of the file cabinets in the personnel area.

On November 21, 2003 in the aftermath of the crash of the Staten Island Ferry "Andrew J. Barberi," an article was published in Newsday (the "Article") quoting a DOT spokesman and referring to DOT's extensive investigative efforts regarding hiring practices and work procedures, both before and after the tragedy.

The Article, entitled "Tight-Knit-Ship; S.I. Ferry Awash in Nepotism, Favoritism and OT, Critics Say" stated in part as follows:

> In the employees' verbal complaints to DOT, they cite the 2001 hiring of Peter Giaccio, the brother of John Giaccio, who himself served as director of ferries until 1998. Peter Giaccio applied for the overtime-rich job as boilermaker in 2001 after learning he was about to be laid off from his sanitation department job, department sources said. Giaccio, whose father, Peter Giaccio Sr., was himself a longtime ferry maintenance worker, beat out at least one skilled tradesman who had worked at DOT for years.
>
> The younger Giaccio [i.e., Plaintiff] has twice tested positive for marijuana in random testing, according to a city official who had access to his personnel records.

## The Summary Judgment Standard

In deciding a motion for summary judgment, a court shall render judgment "forthwith if the pleadings, depositions, answers

7

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

The moving party has the initial burden of showing that there are no material facts in dispute, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and can discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case, Celotex, 477 U.S. at 325. The nonmoving party then must come forward with "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), as to every element "essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1187 (2d Cir. 1987); see also Eastway Constr. Corp. v. New York, 762 F.2d 243, 249 (2d Cir. 1985). However, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to

8

return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there is not, summary judgment is proper. See id. at 249-50.

In cases involving disclosure of confidential information from private records, circumstantial evidence may suffice to defeat a motion for summary judgment, since "plaintiffs can rarely produce direct evidence that the government has disclosed confidential information obtained from their private records . . . ." Doe v. United States Postal Service, 317 F.3d 339, 343 (D.C. Cir. 2003) (citations omitted); see also Teleconnect Co. v. Ensrud, 55 F.3d 357, 360 (8th Cir. 1995) ("reject[ing] the notion that only a 'smoking gun' will suffice to defeat a motion for summary judgment in suits predicated upon asserted disclosures of confidential information.").

**The Regulatory Provisions**

Drug and alcohol test results are to be kept confidential. See 49 C.F.R. §§ 40.321-40.351; 29 C.F.R. § 1630.16. Specifically, 49 C.F.R. § 40.321 states as follows:

Except as otherwise provided in this subpart, as a service agent or employer participating in the DOT drug or alcohol testing process, you are prohibited from releasing individual test results or medical information

9

about an employee to third parties without the employee's specific written consent.

(a) A "third party" is any person or organization to whom other subparts of this regulation do not explicitly authorize or require the transmission of information in the course of the drug or alcohol testing process.

(b) "Specific written consent" means a statement signed by the employee that he or she agrees to the release of a particular piece of information to a particular, explicitly identified, person or organization at a particular time. "Blanket releases," in which an employee agrees to a release of a category of information (e.g., all test results) or to release information to a category of parties (e.g., other employers who are members of a C/TPA, companies to which the employee may apply for employment), are prohibited under this part.

## An Inference that the Article is Accurate
## Creates an Issue of Fact

The ADA requires, with limited exceptions not pertinent here, that "information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record . . . ." 42 U.S.C. § 12112 (d)(3)(B).

Plaintiff's first cause of action alleges that the defendants breached this requirement by failing to maintain these results in separate files and by failing to take steps to prevent the dissemination of these results to the media. See Am. Compl. ¶¶ 13-17.

10

The only evidence in the record establishes that Giaccio's drug test results were maintained, separate from employee personnel files, in separate rooms and that in November 2003, DOT maintained drug testing files in the private office of Anna Budd at 40 Worth Street in Manhattan. Giaccio has not presented any evidence to show that his drug test results were not separately maintained or of any person who improperly viewed his medical files. Similarly, he has not presented any evidence that any City employee disseminated his positive drug test results to the media, other than the contents of the Article itself.

However, Defendants have not established that the locked file cabinet was the only place where drug testing results were maintained or accessible. Nor have Defendants established the identity of those persons who had access to the DOT personnel computer system which contained drug test results, or those who received copies of the CCFs. Neither have Defendants established that the TPA computer system was password protected or the identity of the individuals who had access to it.

The unauthorized disclosure of confidential medical information to the press may constitute a violation of the ADA. See Garrison v. Baker Hughes Oilfield Operations, Inc., 287 F.3d 955, 962 (10th Cir. 2002) ("An employer should not place any

11

medical-related material in an employee's personnel file.")
(quoting Equal Employment Opportunity Technical Assistance Manual §
6.5); Cossette v. Minnesota Power & Light, 188 F.3d 964, 968 (8th
Cir. 1999) (finding commingling of drug test results with personnel
records a violation of the ADA); Pouliot v. Town of Fairfield, 184
F. Supp. 2d 38, 54 (D. Me. 2002) (finding disclosure to the press
that medication plaintiff had been taken "clouded his judgment"
actionable under ADA)[2]; Pollard v. City of Northwood, 161 F. Supp.
2d 782, 793 (N.D. Ohio 2001) (finding that disclosure to the press
that plaintiff was taking an anti-depressant may constitute an
illegal disclosure).

That Giaccio was ordered to place locks on the personnel
file cabinets maintained at the Bay Street DOT Facility after word
was received that the Newsday article would be published leads to
an inference that confidential medical records, including drug test
results, were contained within (or accessible from) the personnel
files maintained at that facility.

The Article itself creates an inference, if not proof,
that confidential drug testing records were disclosed by a City

---

[2] Plaintiff's claim in Pouliot for unlawful disclosure of his
confidential medical records was later dismissed when it was
determined that his medical information was not obtained as a
result of an "employee inquiry." See Pouliot v. Town of
Fairfield, 226 F. Supp. 2d 233, 245 (D. Me. 2002).

12

official with access to the records as set forth in the Article.
In view of the requirement that inferences are to be drawn in favor
of those opposing summary judgment, see Lopez, 831 F.2d at 1187, a
factual issue has been presented as to whether an official did make
the alleged disclosure, an issue sufficient to defeat summary
judgment on the grounds that Giaccio has failed to present
sufficient evidence of the alleged violation.

## Giaccio Has Failed to Establish Damages

Viewing all inferences in favor of the non-movant,
Giaccio has not established that he suffered any injury or damages
as a result of the dissemination of his positive drug test results
to Newsday. A technical violation of section 12112 (d) will not in
and of itself give rise to damages liability. In the absence of
any damage, Giaccio's ADA claim must be dismissed. See Tice v.
Ctr. Area Transp. Auth., 247 F.3d 506, 519 (3d Cir. 2001);
Cossette, 188 F.3d at 971; Armstrong v. Turner Indus., Inc., 141
F.3d 554, 562-63 (5th Cir. 1998); Mickens v. Polk County Sch. Bd.,
430 F. Supp. 2d 1265, 1282 (D. Fla. 2006), aff'd, 218 Fed. Appx.
980 (11th Cir.), cert. denied, 127 S. Ct. 2136 (2007).

In Tice, although the defendant admitted to co-mingling
to records, the Court nevertheless held that the plaintiff could

13

not demonstrate that he suffered any injury by the violation and therefore could not pursue a claim under 42 U.S.C. § 12112 (d). 247 F.3d at 519.

The disclosure of Giaccic's failure to pass a drug test did not result in any economic harm. He was not terminated from his employment on either of the two occasions when he tested positive for marijuana, and he has conceded that he did in fact "smoke pot." Giaccio Deposition Transcript ("Giaccio Tr.") at 60. In accordance with DOT policy in 2002 and 2003, after testing positive for drugs, Giaccio was placed on a medical leave of absence without pay and after completing his counseling, he returned to his position and remains employed by the DOT.

Plaintiff has not alleged, and the evidence does not support, the deprivation of a property interest in his employment. See S & D Maint. Co., Inc. v. Goldin, 844 F.2d 962, 967 (2d Cir. 1988).

Giaccio has also contended that he suffered injury as a result of the dissemination of his drug test results by suffering anxiety, embarrassment and damage tc his reputation, including the inability to continue refereeing basketball games. See Pl. Memo. of Law, at 16. However, Giaccio has offered no evidence

14

demonstrating that he was forced to cease refereeing these games or that the cessation was due to the dissemination of his positive drug test. Giaccio's "bare allegations of mental/emotional distress, mental anguish, stress and inconvenience," unsupported by any evidence, are insufficient to establish the damages necessary to maintain Plaintiff's action under the ADA. Tice, 247 F.3d at 520 (quotation marks omitted).

## The Equal Protection and Due Process Claims are Dismissed

Giaccio's second cause of action alleges that defendants deprived Plaintiff of his due process and equal protection rights under the Fourteenth Amendment and in violation of 42 U.S.C. § 1983.

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); see also LaTrieste Restaurant v. Vill. of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999).

To prevail on a differential treatment claim, plaintiffs in this Circuit must show both: "(1) that they were treated differently from other similarly situated individuals, and (2) that

15

such differential treatment was based on impermissible consideration such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Harlan Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). Here, Plaintiff fails to meet both elements.

Giaccio has failed to identify any person to whom he was similarly situated, let alone a similarly situated person who received better treatment. "To be similarly situated, the individuals with whom [the plaintiff] attempts to compare [himself] must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997). In other words, the plaintiff must establish "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000). Because Giaccio has not alleged, nor can he show, that he was treated differently than any other similarly situated individuals, his claim must be dismissed. See Gagliardi v. Vill. of Pawling, 18 F.3d 188, 193 (2d Cir. 1994) (finding it "axiomatic" that "a plaintiff must allege that similarly situated persons have been treated differently" to establish a violation of the Equal Protection Clause).

16

Additionally, Giaccio has not identified that he has any protected status recognized by the Fourteenth Amendment's jurisprudence, nor has he identified any persons, to whom plaintiff is similarly situated, who do not have protected status recognized by the Fourteenth Amendment's jurisprudence. See Harlan Assocs., 273 F.3d at 499.

This Circuit has also recognized violations of equal protection predicated not on protected class status, but on "selective treatment motivated by ill-will" which are "lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply." Le Clair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980).

In Le Clair, plaintiff alleged that the defendant milk inspector had maliciously denied his application to ship milk out of state. The court found that defendant's "spiteful mood" did not rise to the level of malicious intent necessary to constitute an equal protection violation. Id. at 610-11.

Here, Giaccio has failed to adduce any evidence of selective treatment borne of personal animosity. See id.; Bizzarro v. Miranda, 394 F.3d 82, 86-87 (2d Cir. 2005).

17

In addition, Giaccio has not identified any process that he was supposedly denied by the DOT which would give rise to a claim under the Due Process Clause. He does not contest the random drug test procedures he underwent at DOT, or that he tested positive for marijuana twice.

To the extent that Giaccio is claiming a violation of a right to privacy, such a claim also fails and must be dismissed.

Giaccio testified that "everybody knew" at DOT that he had tested positive for marijuana. Giaccio Tr. at 63. The record, including his own testimony, established that Giaccio disseminated his positive drug test results to his co-workers. See id.

His disclosure of the information also eliminates any expectation to a right of privacy and is a waiver of any right to privacy. See Doe v. Marsh, 105 F.3d 106 (2d Cir. 1997), amended by 1997 U.S. App. LEXIS 5065 (Mar. 17, 1997) (finding that plaintiff's prior conduct of discussing HIV status could be construed as waiver of right to privacy of HIV status); Gooden v. Carson, 2006 U.S. Dist. LEXIS 28838, at *22-*23 (N.D. Ga. Apr. 26, 2006) (finding that plaintiff's own disclosure of his positive drug test eliminated any legitimate expectation of privacy in this

18

information) (citing Cummings v. Walsh Const. Co., 561 F.Supp. 872, 885 (S.D. Ga. 1983) (finding that plaintiff waived her right to privacy by communicating the events herself to third parties)).

## Municipal Liability Under 42 U.S.C. § 1983 Has Not Been Established

Giaccio has failed to establish that alleged "deprivation of his constitutional rights resulted from a custom or policy of the municipality." See Giaccio, 2005 U.S. Dist. LEXIS 642, at *21 (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978)). See also Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1992).

To state a claim against a municipality, the plaintiff must allege both that there was a particular policy, practice or custom and that the particular policy, practice or custom was the legal cause of plaintiff's constitutional injury. Monell, 436 U.S. at 694. A section 1983 claim against a municipality may not be brought on the basis of respondeat superior. Id. at 691. Rather, the plaintiff must demonstrate that it was the municipality's policy which caused the governmental official to violate plaintiff's constitutional rights. Id. at 694.

In an attempt to establish a custom and practice, Giaccio

19

has contended that when Richard Baybusky ("Baybusky") tested positive two years ago "everyone" knew it by the time that he returned to work from a medical leave of absence. See Pl. Memo. at 21; Baybusky Decl., ¶ 3. Giaccio has not established that the Defendants were responsible for the dissemination of Baybusky's drug test results.

In any event, although the Amended Complaint alleged that unauthorized disclosure of drug test results occurred at least three times, Am. Compl. ¶ 28, Giaccio has produced evidence of only two occasions -- his own and Baybusky's -- in which dissemination allegedly occurred.

Even assuming the unauthorized disclosure of both Baybusky's and Plaintiff's test results, there is insufficient evidence in the record to support a finding of a custom, policy or practice of disclosure. See Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under section 1983 simply for the isolated unconstitutional acts of its employees."); Bowles v. N.Y. City Transit Auth., 2006 U.S. Dist. LEXIS 32914, at *58 n.31 (S.D.N.Y. May 23, 2006) (stating that "the combined evidence of only two incidents would still be insufficient to show a 'custom or usage' under the Monell standard."). Accordingly, Plaintiff's section

20

1983 claim must be dismissed.

## The NYSHRL and NYCHRL Claims are Dismissed

In his fourth and fifth causes of action, Giaccio has alleged that defendants' actions violated the NYSHRL and NYCHRL. Giaccio has not cited any specific provision of these laws recognizing the right to privacy in drug tests administered for public employment. Indeed, neither of these statutes contains a cause of action for an invasion of a right to privacy. See generally Executive Law § 296, et seq.; New York City Admin. Code, § 8-107, et seq. Moreover, as set forth above, Giaccio has not established that defendants were responsible for any harm from the dissemination, especially in light of Giaccio's own disclosure of the information.

Giaccio has contended that his claims under the NYSHRL and NYCHRL must survive because he suffers from a disability in that he was "recovering." See Pl. Memo. at 24-25. However, Giaccio testified at deposition that he does not suffer any disabilities, except anxiety unrelated to drug use. See Giaccio Tr. at 44. This new claim of disability, first introduced in Plaintiff's brief in opposition to the instant motion, contradicts his deposition testimony and must be disregarded. Heil v. Santoro,

147 F.3d 103, 110 (2d Cir. 1998) (holding that "a party opposing summary judgment does not create a triable issue by denying his previously sworn statements.").

In any event, Giaccio provides no evidence that he was a recovering drug addict at the time of the alleged dissemination.

**Conclusion**

Based upon the conclusions set forth above, the Amended Complaint shall be dismissed with prejudice.

Submit judgment on notice.

New York, NY
August  / 4, 2007

ROBERT W. SWEET

U.S.D.J.

22